George McPhail *v.* The State.

Theft — Charge of the Court. — A conviction for theft of certain oxen was had upon evidence from which the jury might have inferred that, though the defendant killed the oxen without their owner's consent, and afterwards skinned them and appropriated the hides, yet that he killed them because they were depredating on his crop, and with no intent to appropriate them or any part of them. *Held*, that the trial court should have distinctly instructed the jury that, in case they so found the facts to be, the defendant was not guilty of theft of the oxen. It was not sufficient to instruct that such a state of facts would warrant a conviction for the misdemeanor of killing live stock without the owner's consent, etc.

Appeal from the District Court of Gonzales. Tried below before the Hon. Everett Lewis.

The opinion of the court gives the evidence in full. The charge to the jury gave them clearly the law applicable to the case if the felonious intent existed at the time the defendant killed the oxen, and then proceeded as follows: "If the jury believe that the defendant did not kill said oxen, either one or both, for the purpose of appropriating the hide to his own use, but that he did kill either one of them wilfully, without the consent of the owner, then they should acquit of theft, but find him guilty of a misdemeanor, and assess his punishment by a fine not exceeding one thousand dollars.

No brief for the appellant.

*Horace Chilton,* Assistant Attorney General, for the State.

HURT, J. The appellant was charged with the theft of two oxen, was convicted, and his punishment assessed at two years' confinement in the penitentiary; from which judgment of conviction he appealed to this court. Upon the trial these facts were proved by the State, to wit: "By owner, that the oxen had been gone some two weeks, and he went to the appellant's on Tuesday, the 22d of April, and found the carcass of one of the oxen within ten or twenty yards of the defendant's fence; the hide had been taken off, and dragged away. He trailed the drag and found the hides of both in the defendant's smoke-house; recognized them as the hides of his cattle; never gave consent," etc.

Morris May, for the State: "The night before the oxen were killed I stayed all night at defendant's. About sunrise next morning I and defendant started across the field of defendant. Defendant had his gun. We saw the oxen in question in defendant's field. Defendant ran them out of the field. After he got into the woods, he cut a stick, knocked out a shell and put in a cartridge. He went about six yards from the fence, and shot at the oxen, which were about forty yards from him, and one standing behind the other. One of the oxen went about ten steps and laid down, and the other stood by him. Defendant's wife then called us to breakfast. Defendant and I rode over the neighborhood until twelve o'clock, when we ate dinner at defendant's house, and I went home. When defendant took up his gun, he said he was going turkey-hunting. I went with him for the purpose of staking my horse on a piece of grass land in defendant's field. Defendant's corn was six or eight inches high;

the oxen were in it when we first saw them. Don't think defendant said anything at the time of the shooting. Before running them out, he said he believed the oxen would eat up his corn, as he hadn't time to fix his fence. Defendant had a very indifferent fence; made of poles and rails, averaging about four poles. This occurred on Sunday, the 20th of April, 1879."

Archer Tally, for the State: "Am well acquainted with defendant; live about two miles from him; see him at the bar. On Monday or Tuesday after the killing of the oxen, about night, defendant came to my house, and proposed to sell me his crop, saying that he had to leave the country, that somebody had killed some oxen near his house, and that he and Tal Gibson had skinned them, and he feared he would have trouble about it."

These being the facts the appellant requested the court to charge the jury, "That an after-appropriation of the hides would not warrant a conviction under the indictment unless the jury believed from the evidence in the case that, at the time of the killing, there was in the mind of the defendant an intent to appropriate the oxen or some part thereof to his own use."

The court proposed to insert in this charge, after the word "conviction," the words "of theft;" which was not agreed to by counsel for defendant, and the charge was refused.

The case as made by the facts demanded of the court below a charge conveying the exact idea contained in the refused charge touching the question of theft, whether asked or not. It may be true as a legal proposition that the defendant may have killed the oxen, and afterwards conceived the intent to appropriate the hides, without being guilty of theft; and the jury should have been informed in unmistakable terms of this legal fact. And this law should have been given to the jury separate and distinct from every other question. After having applied

this law to the facts, clearly and unmixed with any other matter, if deemed necessary, the court should have called the attention of the jury to the misdemeanor. The intent to appropriate at the time of the killing being, under the facts of this case, the all-important and necessary ingredient of theft, and the jury naturally being disposed to infer this intent from the appropriation alone, a charge such as was indicated by that which was refused was imperatively demanded.

The other questions raised in the record will not arise upon another trial. The law of this case,—that which was absolutely required by the facts,—not being given in the charge, the judgment is reversed and the cause remanded.

*Reversed and remanded.*